**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HEALTH CARE FACILITY MANAGEMENT LLC
d/b/a CommuniCare Family of Companies,

    Plaintiff,

           v.

JEDKREISKY MALABANAN,

    Defendant.

Case No. 1:23-cv-00236

Judge Michael R. Barrett

## ORDER

This matter is before the Court on the Report and Recommendation ("R&R") filed by the Magistrate Judge on February 5, 2024.[1] (Doc. 17). Plaintiff Health Care Facility Management LLC d/b/a CommuniCare Family of Companies ("CFC") timely filed a partial objection.[2] (Doc. 19). Defendant Jedkreisky Malabanan ("Malabanan") did not respond to CFC's partial objection and the time to do so has passed.[3]

By way of procedural background, CFC filed suit against Malabanan in the Hamilton County, Ohio Court of Common Pleas alleging breach of contract, unjust enrichment, and fraud. (Doc. 2). Ostensibly proceeding *pro se*, Malabanan promptly removed the case here and answered. (Docs. 1, 6). The case was then referred to Magistrate Judge Stephanie K. Bowman pursuant to S.D. Ohio General Order CIN 14-

---

[1] Proper notice was given to the parties under 28 U.S.C. 636(b)(1)(C) and Fed. R. Civ. P. 72(b), including notice that they may forfeit rights on appeal if they failed to file objections to the R&R in a timely manner. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *see Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).

[2] Objections must be filed within 14 days after being served with an R&R. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

[3] "A party may respond to another party's objections within 14 days after being served with a copy.

1

01. Shortly thereafter attorney Ghassan M. Shihab entered an appearance of behalf of Malabanan (Doc. 10) and filed an Amended Answer (Doc. 11) that includes a dozen counterclaims against CFC. Pending is CFC's motion to dismiss (Doc. 13) all counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As will be explained in greater detail, the Magistrate Judge recommends that CRC's Rule 12(b)(6) motion be denied except as it relates to Malabanan's counterclaim for unjust enrichment.

**Standard.** Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, determinations by a magistrate judge are subject to review by a district judge. A district judge must "modify or set aside" any part of an order as to a non-dispositive matter if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). But when objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been **properly** objected to." Fed. R. Civ. P. 72(b)(3) (emphasis added). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.; *see also* 28 U.S.C. § 636(b)(1).

**Summary of the R&R.** The Magistrate Judge begins by excluding four of the six exhibits attached to CFC's motion. (Doc. 17 PAGEID 465–70). The Recruiting Agreement (between WorldWide HealthStaff Solutions Ltd. and MD OMG EMP, LLC)—offered to support dismissal of Malabanan's Trafficking Victims Prosecution Act ("TVPA") and Racketeer Influenced and Corrupt Organizations Act ("RICO") counterclaims—is improper under Rule 12(b)(6) because it "is neither explicitly referenced in Malabanan's [c]ounterclaims nor central to those claims." (Id. PAGEID 468). Likewise, "there is no reference" to the "General Orientation Acknowledgement Form", offered not only to

support CFC's contention that Brookside (and not CFC) was Malabanan's "actual" employer (for purposes of his Fair Labor Standards Act ("FLSA") counterclaims) but also to upend Malabanan's breach of contract counterclaims.  (Id.).  Similarly, the Magistrate Judge excluded "miscellaneous" policies and procedures offered to defeat Malabanan's TVPA counterclaims as well as bolster CFC's position that Brookside (alone) employed him.  (Id. PAGEID 469).  Further, the Magistrate Judge rejected CFC's argument (Doc. 15 PAGEID 449) that these policies and procedures were "incorporated into" the August 1, 2022 "letter-contract" (see Doc. 11-1) that Malabanan attached to his counterclaims.  (Id.).  Finally, the "QuickConfirm License Verification Report" (dated June 13, 2023) from third-party Nursys is properly excluded "[b]ecause the document is not explicitly referred to by Malabanan in the [c]ounterclaims and is not central [to] his underlying claims[.]"  (Id. PAGEID 470).  What's more, Malabanan "does not deny" that he became licensed in Ohio as a registered nurse.  (Id.).

The Magistrate Judge then proceeded to consider CFC's substantive arguments, noting that it would be appropriate for the Court to consider the same August 1, 2022 letter-contract that Malabanan attached to his counterclaims "because it is repeatedly referenced in and central to Malabanan's claims."  (Id. PAGEID 467).  In the same way, the Court "also may consider a paystub that reflects Malabanan's pay for his last week of work in January[.]"  (Id.).[4]  "The issue of whether the repayment provision would reduce Malabanan's final pay below the minimum wage threshold is a central issue to Malabanan's declaratory judgment claim under the [FLSA], and Malabanan refers to the

---

[4] The Magistrate Judge qualified her decision, however, noting that the paystub could be considered "so long as there are no specific challenges to its authenticity."  (Doc. 17 PAGEID 467 (footnote omitted)).  Inasmuch as Malabanan filed no response to CFC's objections, any challenge is waived.

3

same pay stub in his pleading." (Id.).

**Analysis of the Magistrate Judge's evidentiary order.** Citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), CFC objects to the Magistrate Judge's non-dispositive order excluding four of its six exhibits. (Doc. 19 PAGEID 492–95).

In an apparent issue of first impression, the Sixth Circuit in *Weiner* adopted the Seventh Circuit's "approach" to Fed. R. Civ. P. 10(c) and held that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim.'" 108 F.3d at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).[5] This is precisely the legal standard that the Magistrate Judge applied. (*See* Doc. 17 PAGEID 465–70 (quoting *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); citing *Amini v. Oberlin Coll.*, 259 F3d 493, 502 (6th Cir. 2001) (quoting *Weiner*)).

Moreover, the Court finds no error in the factual findings made by the Magistrate Judge as to what documents are referred to in—and central to—Malabanan's counterclaims.

CFC contends that the Court should consider the Recruiting Agreement, because "Malabanan's allegations perpetually, substantively refer to and relies on [it], **even if not by name**." (Doc. 19 PAGEID 493 (emphasis added)). But "name" matters. This is not an ERISA case like *Weiner*, where the plaintiff's claims were based solely "on rights under the plans which are controlled by the plans' provisions as described in the plan

---

[5] To be clear, *Weiner* did not *hold* that "a defendant may introduce certain **pertinent** documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a **dispositive** document upon which [he] relied." (*See* Doc. 19 PAGEID 493 (citing *Weiner*, 108 F.3d at 89 (citations omitted and emphases added by the undersigned))).

4

documents." *See Weiner*, 108 F.3d at 89.

CFC protests exclusion of the Acknowledgement Form because Malabanan references the "inadequacy" of his orientation. (Doc. 19 PAGEID 494). *Weiner*, though, does not support this proposition. To consider this document now would erase the distinction between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment. CFC also protests exclusion of the "Policies and Procedures" it attributes to Brookside because Malabanan "assert[s ] factual allegations and claims relying on the[m]." (Id.). Not so. Malabanan refers to common noun "policies", not proper noun "Policies".

Finally, CFC insists that the Nursys Report should be considered, because "[a]lthough Malabanan may not dispute that he was a Registered Nurse, that does not mean it is not central to the issues alleged in his [c]ounterclaims." This rationale is mere syllogism.

**Analysis of the Magistrate Judge's recommendation as to CFC's Rule 12(b)(6) motion.** The Court turns next to the Magistrate Judge's recommendations with respect to CFC's substantive arguments. CFC agrees with the Magistrate Judge's recommendation that Malabanan's unjust enrichment counterclaim be dismissed. (*See* Doc. 19 PAGEID 492, 506). CFC otherwise objects to the Magistrate Judge's recommendation that the remaining counterclaims—alleging federal statutory violations and state common law breach of contract—survive. CFC's objections will be overruled.

**FLSA counterclaims**. As to the FLSA claims, the Magistrate Judge concludes that "it is clear that Malabanan has plausibly alleged that CommuniCare was his employer." (Doc. 17 PAGEID 471–72). And she notes that CFC (in its reply

5

memorandum) "(mis)characterizes Malabanan's allegations as referring only to Brookside[]" and "misrepresents" the express language of the August 1, 2022 "letter-contract" that "continually refers to CommuniCare as the employer and to Malabanan as its 'prospective employee.'" (Id. PAGEID 472 (footnote omitted)). CFC complains that the Magistrate Judge "does not identify any specific factual allegations, **outside of the Letter Contract and immigration forms filed on behalf of Malabanan**, with the Counterclaims that support Malabanan's assertion that CommuniCare was his employer. The mere fact that CommuniCare is listed as the company offering Malabanan employment in the Letter Contract does not suffice to **establish** that CommuniCare was Malabanan's employer under the FLSA." (Doc. 19 PAGEID 495 (emphases added by the undersigned)). At the pleading stage, however, Malabanan is not required to "establish" anything. Rather, as the Magistrate Judge both explains and emphasizes[6], at issue is whether Malabanan's allegation (that CFC was his employer) is *plausible*. Upon de novo review, the Court finds that it is.

**TVPA counterclaims.** Relevant to the TVPA claims, the Magistrate Judge explains:

> Malabanan alleges that he "was forced to enter into a letter-contract of employment containing the Repayment Provision on a take-it-or-leave-it basis and faced substantial harm if he did not sign the letter-contract, including potentially having his immigration sponsorship withdrawn or having his green card revoked, or having his employment rescinded, and any of such would be financially ruinous to him." (Doc. 11, ¶339).
> . . . .

---

[6] "The undersigned emphasizes that in no way is any of the foregoing analysis intended to resolve any issues in this case other than whether Malabanan's allegations survive CommuniCare's Rule 12(b)(6) motion. The plausibility standard is just that – plausibility, not probability. It is entirely possible that once the record is developed, CommuniCare will disprove Malabanan's allegations and be awarded judgment on all remaining claims." (Doc. 17 PAGEID 488).

6

> All of the TVPA violations, along with two declaratory judgment claims (Counts 9 and 11) rest on Malabanan's contention that the repayment provision and threats of legal process to enforce that provision amount to abuse of the legal process and/or "serious harm"[ as defined in the statute].
>
> But CommuniCare argues that Malabanan's allegations are insufficient. "There are all sorts of financial pressures that can arise in the employment setting, and not all of them serve to establish a TVPA violation." *Dale Carmen v. Health Carousel, LLC*, (hereafter "*Health Carousel I*"), No. 1:20-cv-313-DRC, 2021 WL 2476882, at *6 (S.D. Ohio June 17, 2021). "[T]o constitute 'financial harm' under the TVPA, the threatened harm must be in some way improper or illicit." *Id.* CommuniCare maintains that the repayment clause, including the warning of the pursuit of "restitution through legal channels," was both proper and fully enforceable under Ohio law. (Doc. 13, PageID 386-87). Therefore, CommuniCare argues that it did not engage in any illicit conduct that violates the TVPA.

(Doc. 17 PAGEID 472–74). The Magistrate Judge's conclusion that Malabanan has plausibly alleged "serious harm" under the TVPA is largely informed by Judge Cole's decision in *Health Carousel I*. "The court emphasized the limited scope of review under Rule 12(b)(6) and the necessity of contextual analysis, pointing out that the same term would not have the same impact when applied to a corporate CEO with a $10 million annual salary as it would upon a 'foreign citizen recruited to a job opportunity in this country [who] may not have a deep (or any) understanding of the legal system or their rights under that system[.]'" (Id. PAGEID 475–76 (quoting *Health Carousel I*, 2021 WL 2476882, at *6)).

CFC objects to the Magistrate Judge's heavy reliance on *Health Carousel I*, which it describes as "nothing like this case." (Doc. 19 PAGEID 497). "[T]he court in *Health Carousel* had seven (7) other reasons for concluding that plaintiff's TVPA claim survived defendant's motion to dismiss. Here, Malabanan solely relies on the stipulated damages provision, which, as stated in CommuniCare's Motion to Dismiss, is valid under Ohio law.

7

Moreover, the stipulated damages provision here, unlike in *Health Carousel*, involves repayment for location expenses, not lost profits." (Doc. 19 PAGEID 498). But the Magistrate Judge acknowledges that "[t]he nurses in *Health Carousel I* alleged other illicit contractual terms, including provisions in the Employee Handbook to which they agreed upon their arrival." (Doc. 17 PAGEID 475 n.9). And she details why *Estavilla v. Goodman Grp., LLC*, No. 21-68-M-KLD, 2022 WL 539192 (D. Mont. Feb. 23, 2022)—cited by CFC as "distinguishing *Health Carousel I* and granting defendants' motion to dismiss TVPA claims after concluding that a $20,000 'liquidated damages' provision for the advancement of immigration and relocation expenses was permissible"—is not on point:

> Consider that the Letter Contract at issue does not specify an *exact* dollar figure for repayment as would be typical for an actually "liquidated" damage figure, but instead sets forth a list of expenses that the parties agree "may" be used to determine the repayment amount, including the cost of airfare, "an equivalent cash allowance of $1,000," immigration expenses including the employee's "National Visa Center Bill" and "Visa Screen Certificate" plus "advance payments … related to immigration." (*See* Doc. 11-1, ¶¶3, 7, 8). In its motion to dismiss, CommuniCare suggests that ¶8 makes the contract enforceable because it *estimates* the stipulated damage amount by specifying that CommuniCare *intends* to advance "*approximately* $16,000." (Doc. 13, PageID 388). It argues further that "the amount of $16,000 was a reasonable prediction of the amount of potential damages." (*Id.*, PageID 389). Yet the repayment provision in ¶9 does not confine itself to the $16,000 estimate in ¶8, instead referring back to ¶¶ 3, 7, and 8 as advances that the employee could be required to repay. And in its complaint seeking payment from Malabanan, CommuniCare seeks to recover advancements totaling more than $50,000. (Doc. 2, ¶¶ 7-9, 13-16). In the absence of any discovery regarding the surrounding circumstances (including whether Malabanan had fair notice of the precise sum that CommuniCare would seek to collect), the undersigned cannot determine whether the "repayment provision" would be treated as a proper "liquidated damages" provision under Ohio law or as an "unconscionable, unreasonable, and disproportionate" penalty.

(Doc. 19 PAGEID 477–78 (italics emphasis in original) (footnotes omitted)). She also

8

distinguishes *Physicians Anesthesia Serv. v. Burt*, No. C-060761, 2007 WL 4463972 (Ohio Ct. App., 1st Dist., Dec. 21, 2007), the unpublished Ohio appellate court decision on which CFC relies:

> The Ohio court stressed the unique surrounding facts and circumstances before concluding that the liquidated damages provision was not unreasonable or unconscionable:
>
>> Burt, an experienced nurse, had entered into and then breached a previous contract with a nearly identical liquidated-damage provision. [Physicians Anesthesia Service] had assisted Burt in satisfying a 50%-of-the-principal-balance damages provision when she breached her contract with Anesthesia Group Practice, Inc. to join [Physicians Anesthesia Service].
>
> *Id.*, 2007-Ohio-6871, ¶ 18, 2007 WL 4463972, at *4. In contrast to *Burt*, Malabanan professes to be an inexperienced immigrant unfamiliar with the U.S. legal system, and it is not clear from the Letter Contract when (if ever) he was advised of the precise total of "advances" that he would be expected to repay.

(Doc. 17 PAGEID 478–79). At base, CFC's objections are nothing more than mere disagreements with the Magistrate Judge's conclusion as to whether Malabanan has plausibly alleged "serious harm" under the TVPA. As such, they are overruled. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (explaining that general disagreements with the Magistrate Judge fall short of a plaintiff's obligation to make specific objections to an R&R); *see also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

**RICO counterclaims.** As to the RICO[7] claims, the Magistrate Judge concludes

---

[7] "To establish a [civil] claim under RICO, the plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020)

that Malabanan plausibly alleges that "[CFC] (together with its healthcare facility-clients) and WorldWide acted with a common purpose of recruiting, providing, and processing inexpensive foreign-trained registered nurses to perform work in the United States[]" and that this enterprise "consistently engages in interstate commerce." (Doc. 17 PAGEID 480–81). She gives no credence to CRC's contention that "Malabanan's accusations that CommuniCare engaged in fraud in carrying out *its* business does not mean that it was engaged in a RICO enterprise." (Id. PAGEID 481–82 (italics emphasis added by the undersigned)).[8] As the Magistrate Judge recounts:

> According to Malabanan, World[W]ide prepared immigration forms on CommuniCare's behalf, and "had a principal and significant role in terms of directing or deciding who among the nurse-applicants would …eventually be employed by CommuniCare." (Doc. 11, ¶168, *see also*, *generally* ¶¶166-177, 274, PageID 104-106, 119-120). In its capacity as CommuniCare's agent, Malabanan alleges that WorldWide "knew, came to know, or had to know" that CommuniCare did not intend to pay its nurses a prevailing wage and required repayment if the nurses failed to complete a 36-month term of employment. (*Id.*, ¶172). Malabanan further alleges that WorldWide "knew about" the visa misrepresentations by CommuniCare "and condoned the same." (*Id.*, ¶175). Thus, Malabanan plausibly alleges that WorldWide knew that CommuniCare was engaging in fraud. (*See generally*, *id.*, [¶¶] 166-177, 276).

(Id. PAGEID 482).

---

(quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). A "pattern" of racketeering activity "requires at least two acts of racketeering activity" that occur within ten years of one another. *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 593–94 (6th Cir. 2022) (citing 18 U.S.C. § 1961(5)).

[8] CFC contends that "Malabanan's RICO claims fail because the[y    ] do[ ] not sufficiently allege an 'enterprise' or a 'pattern of racketeering.'" (Doc. 13 PAGEID 391). *Cf. Health Carousel II*, 2023 WL 5104066, at *9 ("Plaintiffs say that Health Carousel (and its affiliates) carry out a business plan that routinely violates multiple federal criminal statutes. (Doc. 43, #1029–35). Off the bat, it appears to the Court—and no party disputes—that Health Carousel is an enterprise operating in interstate commerce. Instead, the parties mainly contest whether Plaintiffs plausibly allege the following three elements: (2) that Health Carousel committed the requisite predicate acts; (2) that Plaintiffs suffered a RICO injury; and (3) that Health Carousel proximately caused said RICO injury. Ultimately, the Court agrees that Plaintiffs plausibly allege each of these elements.")

The Magistrate Judge further concludes that Malabanan plausibly alleges facts that would establish a "pattern" of racketeering. (Id.). He accuses CFC of predicate acts of fraud and multiple (and repeated) violations of the TVPA. In response to CFC's complaint that Malabanan failed to plead the fraud claims with particularity as Fed. R. Civ. P. 9(b) requires, the Magistrate remarks:

> Count 6 contains Malabanan's allegations of visa fraud, 18 U.S.C. § 1546; wire fraud, 18 U.S.C. § 1343; and fraud in foreign labor contracting, 18 U.S.C. § 1351. There, Defendant specifically alleges that CommuniCare knowingly misrepresents on its Form I-140 immigrant worker petitions that its terms of employment comply with state law, when in fact the repayment provision is an illegal penalty. (Doc. 11, ¶268). He alleges that CommuniCare also knowingly misrepresents on the same forms that it is seeking workers for full-time permanent employment, even though it knows there are periods when its workers (including Malabanan) will be unassigned to any facility or "benched." (*Id.*, ¶ 269). He accuses CommuniCare of misrepresenting on its immigration forms that it pays the "prevailing wage" when that is untrue given the repayment provision and practice of "benching" some workers without pay. (*Id.* ¶270; *see also* ¶100 (alleging that CommuniCare did not put Defendant on its payroll upon Malabanan's entry into the United States)).
>
> In terms of wire fraud and fraud in foreign labor contracting, Malabanan alleges that CommuniCare failed to inform him of such non-payment periods, "instead communicating to him that he would be [a] full-time and permanent employee." (*Id.*, ¶271). Malabanan alleges that the terms of employment, including the referenced misrepresentations, were electronically communicated to him on August 1, 2022 by CommuniCare's agent, Hailee A[]berts, as well as to other nurses in the Philippines on specified dates between May and August 1, 2022. (*Id.*, ¶275).

(Id. PAGEID 482–83). She then adopts as her own Judge Cole's reasoning that appears in a decision released (in the same civil action brought against Health Carousel but) after briefing closed on CFC's Rule 12(b)(6) motion. *See Carmen v. Health Carousel, LLC*, ("*Health Carousel II*"), No. 1:20-cv-313, 2023 WL 5104066, at *10 (S.D. Ohio Aug. 9, 2023) ("[W]hile the Court applies the heightened fraud pleading standard of Rule 9(b) to

11

these fraud predicates, *see Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017), Plaintiffs have met that standard here. They present the actual contractual terms containing the alleged misrepresentations. Indeed, *Plaintiffs appear to say the contract terms and visa applications themselves contained fraud because Health Carousel had no intention to follow through on them. This specificity puts Health Carousel on notice of its alleged fraud.*") (italics emphasis added by the undersigned) (footnotes omitted)).

CFC objects to the Magistrate Judge's findings that Malabanan plausibly pleads an "enterprise" and fraud-based predicate acts. (Doc. 19 PAGEID 499–503). However, CFC's "enterprise" objection repackages arguments made in its motion to dismiss papers. *Cf.* (Doc. 19 PAGEID 499–501) *with* (Doc. 13 PAGEID 391–92 & Doc. 15 PAGEID 455–56). Under *Aldrich*, then, this objection is overruled. *See Renchen v. Comm'r of Soc. Sec.*, No. 1:13-cv-752, 2015 WL 1097349, at *6 (S.D. Ohio Mar. 11, 2015) (plaintiff's objection "is an almost verbatim recitation of the argument presented to and considered by the Magistrate Judge" and therefore need not be reconsidered) (citing *Howard*). CFC's Rule 9(b) objection likewise repeats what it argued (unsuccessfully) before. *Cf.* (Doc. 19 PAGEID 501–03) *with* (Doc. 13 PAGEID 392–93 & Doc. 15 PAGEID 455–57). Moreover, because it fails to address (much less challenge) reliance on Judge Cole's reasoning in *Health Carousel II*, for all intents and purposes, CFC's objection is nothing more than a blanket disagreement with the Magistrate Judge. Under *Howard*, *Aldrich*, and *Renchen*, it is appropriately overruled.

**Breach of contract counterclaims.** The Magistrate Judge finds CFC's arguments regarding the plausibility of Malabanan's breach of contract claims to be "[n]onsense." (Doc. 17 PAGEID 484–85 ("The Letter Contract clearly specifies that

12

Malabanan would be paid an hourly wage for his work. And Malabanan alleges that he worked extended hours (including but not limited to during meal breaks) for which no wages were paid. (Doc. 11, ¶ 123-139). That is a plausible allegation of a breach of contract.")). As to his allegation that he was entitled to an "appropriate" orientation during his first week of work, the Magistrate Judge reiterates why she excluded the proffered Acknowledgement Form and notes that CFC "is free to present the same arguments in any appropriate motion for summary judgment." (Id. PAGEID 485). CFC objects, rehashing arguments previously made that, as the Magistrate Judge observes, are suited to judgment-as-a-matter-of-law rather than failure-to-state-a-claim. These objections fail under *Aldrich* and, accordingly, are overruled.

**Declaratory judgment counterclaim.** The Magistrate Judge concludes that Malabanan has standing to bring a claim for declaratory judgment that CFC's repayment provision violates the "free and clear" regulation applicable to the FLSA's minimum wage requirement. She considered (and distinguished) the case on which CFC relies, *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962 (N.D. Ill. 2019). CFC objects, reprising—more or less word-for-word—the same argument it made in its Rule 12(b)(6) motion. *Cf.* (Doc. 19 PAGEID 504–06) *with* (Doc. 13 PAGEID 395–96). Under *Aldrich* and *Renchen*, this objection, too, is overruled.

**Conclusion.** The Court **ACCEPTS** and **ADOPTS** the February 5, 2024 R&R (Doc. 17) of the Magistrate Judge. Consistent with her recommendation, Plaintiff's Motion to Dismiss (Doc. 13) all counterclaims filed against it is **GRANTED only with respect to Defendant's unjust enrichment claim**; it is otherwise **DENIED**.

IT IS SO ORDERED.　　　　　　　　　　/s/ *Michael R. Barrett*
　　　　　　　　　　　　　　　　　　　JUDGE MICHAEL R. BARRETT